JUDGE SAND

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 2943

───────────────────────────────

ZURICH AMERICAN INSURANCE COMPANY as
successor to ZURICH INSURANCE COMPANY, U.S.
BRANCH,

Civ. No. _____

**COMPLAINT**

                          Plaintiff,

-against-

MUNICH REINSURANCE AMERICA, INC.,
(f/k/a American Re-Insurance Company)

                          Defendant.

───────────────────────────────



RECEIVED
APR 12 2007
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff ZURICH AMERICAN INSURANCE COMPANY, as successor to

ZURICH INSURANCE COMPANY, U.S. BRANCH ("Zurich"), by its attorneys

CHADBOURNE & PARKE LLP, alleges as follows for its Complaint against defendant

MUNICH REINSURANCE AMERICA, INC. ("Munich Re"):

## NATURE OF THE ACTION

1.     This action involves a reinsurance dispute which arises out of Munich Re's

refusal to indemnify Zurich in accordance with the terms of certain facultative reinsurance

certificates.

2.     Zurich seeks damages resulting from: (1) Munich Re's breach of its obligations

under the subject reinsurance certificates to indemnify Zurich for losses and expenses paid in

connection with insurance claims submitted by its insured, Watts Industries, Inc. ("Watts"); and

(2) Munich Re's breach of the implied duty of utmost good faith as it pertains to reinsurance and the implied duty to follow Zurich's fortunes regarding the Watts insurance coverage claims. Zurich also seeks declaratory relief with respect to future losses and expenses arising out of and/or in connection with the insurance claims submitted by Watts.

## PARTIES

3.      Plaintiff Zurich American Insurance Company is the successor in interest to the United States branch of Zurich Insurance Company, and is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Schaumburg, Illinois.

4.      Defendant Munich Reinsurance America is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Princeton, New Jersey. Defendant Munich Reinsurance America was formerly known as American Re-Insurance Company.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

6.      Venue is properly placed in the Southern District of New York, under 28 U.S.C. § 1391, because defendant Munich Re is licensed to do business and transacts business in New York and maintains an office at 1350 Avenue of the Americas, New York, New York.

2

## FACTUAL BACKGROUND

### A.    The Underlying Zurich Insurance Policies

7.    Zurich issued six primary insurance policies to Watts under which Watts submitted claims for coverage (the "Zurich Primary Policies"). The first primary policy, Policy No. GLO6580893-00, was issued on or about June 30, 1991 and provided primary insurance during the period June 30, 1991 through June 30, 1992. The second primary insurance policy, Policy No. GLO6580889-01, provided primary insurance during the period June 30, 1992 through June 30, 1993. The third primary insurance policy, Policy No. GLO6580889-02, provided primary insurance during the period June 30, 1993 through June 30, 1994. The fourth primary insurance policy, Policy No. GLO6580889-03, provided primary insurance during the period June 30, 1994 through June 30, 1995. The fifth primary policy, Policy No. GLO6580889-04, provided primary insurance during the period June 30, 1995 through June 30, 1996. The sixth primary insurance policy, Policy No. GLO6580889-05, provided primary insurance during the period June 30, 1996 through June 30, 1997. Each of the Zurich Primary Policies contained a five million dollar ($5,000,000) limit of liability for each occurrence and in the aggregate.

8.    In addition, Zurich issued four umbrella insurance policies to Watts under which Watts submitted claims for coverage (the "Zurich Umbrella Policies"). The first umbrella policy, Policy No. CC6372667-02, provided insurance during the period June 30, 1991 through June 30, 1992. The second umbrella policy, Policy No. CC6372667-03, provided insurance during the period June 30, 1992 through June 30, 1993. The third umbrella policy, Policy No.

CC6372667-04, provided insurance during the period June 30, 1993 through June 30, 1994. The fourth umbrella policy, Policy No. CC6372667-05, provided insurance during the period June 30, 1994 through June 30, 1995. Each of the Zurich Umbrella Policies contained a ten million dollar ($10,000,000) limit of liability in excess of five million dollars ($5,000,000) for each occurrence.

### B.    Munich Re's Reinsurance of the Zurich Policies

9.    "Reinsurance" is a transaction whereby an insurer, termed the "cedent" or "reinsured," transfers or "cedes" to another insurer, termed the "reinsurer," a portion of the liabilities that the cedent incurs in connection with one or more policies that it issues. The reinsurer and the cedent enter into a reinsurance agreement. The cedent pays a premium to the reinsurer, and in exchange the reinsurer agrees to indemnify the cedent for a portion of the losses and related expenses incurred in connection with the reinsured insurance policy. The portion of each loss that the cedent retains for its own account is termed the cedent's "retention."

10.    Facultative reinsurance is the reinsurance of part or all of the insurance provided by a single policy where each cession is negotiated separately. The reinsurer may have the option of accepting or declining each individual cession.

11.    Munich Re, formerly known as American Re-Insurance Company ("American Re"), issued to Zurich six facultative reinsurance certificates (collectively, the "Facultative Certificates"). American Re issued a certificate numbered 008 782 992 for the period June 30, 1991 through June 30, 1992. Certificate 008 782 992 requires American Re to indemnify

Zurich for loss in excess of a $250,000 per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1991 through June 30, 1992.

12.    American Re issued a certificate numbered 008 896 425 for the period June 30, 1992 through June 30, 1993. Certificate 008 896 425 requires American Re to indemnify Zurich for loss in excess of a $500,000 per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1992 through June 30, 1993.

13.    American Re issued a certificate numbered 009 031 142 for the period June 30, 1993 through June 30, 1994. Certificate 009 031 142 requires American Re to indemnify Zurich for loss in excess of a $1 million per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1993 through June 30, 1994.

14.    American Re issued a certificate numbered 009 088 822 for the period June 30, 1994 through June 30, 1995. Certificate 009 088 822 requires American Re to indemnify Zurich for loss in excess of a $1 million per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1994 through June 30, 1995.

15.    American Re issued a certificate numbered 009 236 266 for the period June 30, 1995 through June 30, 1996. Certificate 009 236 266 requires American Re to indemnify Zurich for loss in excess of a $1 million per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1995 through June 30, 1996.

16.    American Re issued a certificate numbered 009 252 225 for the period June 30, 1996 through June 30, 1997. Certificate 009 252 225 requires American Re to indemnify

Zurich for loss in excess of a $1 million per occurrence retention with respect to losses and expenses paid under the Zurich Policy effective from June 30, 1996 through June 30, 1997.

17.     Zurich paid all premiums due and has satisfied all other terms and conditions of the Facultative Certificates and is not in default of any condition precedent to coverage.

18.     Paragraph one of the General Conditions of each certificate states that "[American Re] agrees to indemnify [Zurich] against losses or damages which [Zurich] is legally obligated to pay with respect to which insurance is afforded during the term of this Certificate under the [Zurich Primary Policies] reinsured."

19.     Paragraph three of the General Conditions of each certificate states that "[American Re] shall be liable for its proportion of allocated loss expense incurred by [Zurich] in the same ratio that [American Re's] share of the settlement of judgment bears to the total amount of such settlement or judgment under the reinsured [Watts] policy."  Allocated loss expense means "all expenses incurred in the investigation and settlement of claims or suits, including the salaries and expenses of staff adjusters but excluding other company salaries and office expenses."

20.     Paragraph six of the General Conditions of each certificate states that "[Zurich] shall furnish proof that payment of a loss and loss expense has actually been made by [Zurich] and payment by [American Re] of its proportion thereof shall be made promptly."

**C.     The Underlying Watts Insurance Coverage Claim**

21.     Watts owned all of the stock of James Jones Company ("Jones") from approximately 1986 to approximately September 1996.  Jones manufactures and sells

waterworks parts to municipal water systems. Beginning in or around late 1990 or early 1991, after Jones was acquired by Watts, Jones allegedly began to manufacture and sell substandard valves and other waterworks components to various parties, including numerous counties and municipalities in California and various contractors working with municipal water systems.

22.     In June 1997, Nora Armenta, a former Jones employee, acting as <u>qui tam</u> plaintiff on behalf of certain political subdivisions of the State of California, filed an action against Watts and Jones in the Superior Court for Los Angeles County, California that alleged a violation of California's False Claims Act (the "<u>Armenta</u> Action" or "<u>Armenta</u>"). In November 1998, the Los Angeles Department of Water & Power ("DWP") filed a complaint in intervention alleging causes of action against Watts and Jones for breach of contract, fraud, negligent misrepresentation and unjust enrichment (the DWP, Nora Armenta, and the political subdivisions for which Ms. Armenta acted as <u>qui tam</u> plaintiff are collectively referred to as "the <u>Armenta</u> plaintiffs"). The <u>Armenta</u> plaintiffs alleged that Jones used substandard metals in its parts to save money, and that Jones falsely certified that its products conformed to the industry standards.

23.     On or about November 1998, Marianne Rothschild filed a class action complaint against Watts and Jones in the Superior Court for San Diego County, California that alleged Unfair Business Practices in violation of the California Business and Professional Code (the "<u>Rothschild</u> Action"). Ms. Rothschild filed a First Amended Class Action Complaint in February 1999. Ms. Rothschild filed a Second Amended Class Action Complaint in May 1999.

24.     Watts and Jones tendered the claims asserted in the Armenta and Rothschild Actions to Zurich under the Zurich Primary and Umbrella Policies.  Zurich initially denied coverage of the claims against Watts and Jones on the basis of no property damage or bodily injury, various business risk exclusions and intentional acts.  Consequently, in February 2001, Watts sued Zurich in California state court for coverage under the policies in place through 1997.  In June 2001, Jones also sued Zurich in California state court for coverage as an additional insured under the policies in place through 1997.  The two actions against Zurich were consolidated and the consolidated action against Zurich is referred herein as the "Coverage Action."

25.     On November 27, 2001, the court in the Coverage Action ordered Zurich to reimburse Watts and Jones for incurred defense costs and to pay further costs until the underlying Armenta Action was resolved.

26.     The Superior Court for San Diego County, California dismissed the Rothschild Action in Watts' and Jones' favor.  Although Watts and Jones were not required to pay any amounts to Rothschild or purported class members, Watts and Jones did incur defense costs in connection with the Rothschild Action.

27.     In connection with the actions against Watts and Jones, Watts and Jones have sought reimbursement from Zurich for at least $33,441,338.38.  To date, Zurich has paid Watts and/or Jones $33,441,338.38 for the Watts and Jones defense costs.

28.     On June 25, 2001, the DWP approved a settlement with the defendants Watts and Jones in the Armenta Action (the "DWP Settlement").  On November 22, 2002, the court in the

Coverage Action ordered Zurich to indemnify Watts and Jones for all amounts which have been, or will in the future be, paid pursuant to the DWP settlement in the <u>Armenta</u> Action. Zurich paid losses and expenses in connection with the DWP settlement.

29.     Watts and Jones entered into a subsequent written settlement agreement with the City and County of San Francisco; the City of Santa Monica; and the East Bay Municipal Utility District (the "Phase I Cities Settlement"). On August 6, 2004, the court in the Coverage Action ordered Zurich to indemnify Watts and Jones in connection with the Phase I Cities Settlement. Zurich paid losses and expenses in connection with the Phase I Cities Settlement.

30.     In addition to the expenses paid by Zurich pursuant to the court order directing Zurich to defend Watts and Jones in the <u>Armenta</u> Action, and the indemnity payments Zurich paid in connection with the DWP and Phase I Cities Settlements, Zurich incurred costs in connection with the Coverage Action brought against it by Watts and Jones (<u>i.e.</u>, declaratory judgment or "DJ" expense).

31.     The <u>Armenta</u> action is ongoing with respect to claimants that have not settled with Watts and Jones, as is the Coverage Action initiated by Watts and Jones against Zurich.

**D.     Zurich's Request For Payment Under The Facultative Certificates and Munich Re's Failure To Pay Zurich**

32.     As reflected in an invoice dated June 12, 2006 (attached here as exhibit A), losses in the amount of $3,194,025.68 and DJ expense in the amount of $406,814.70 were allocated to the Zurich policy in effect from June 30, 1991 to June 30, 1992. These losses and expenses are covered by Facultative Reinsurance Certificate 008 782 992, which requires Munich Re to pay Zurich $2,637,500.00 in losses and $335,931.48 in DJ expense.

33.    As reflected in the invoice dated June 12, 2006, losses in the amount of
$3,194,025.68 and DJ expense in the amount of $406,814.70 were allocated to the Zurich policy
in effect from June 30, 1992 to June 30, 1993.  These losses and expenses are covered by
Facultative Reinsurance Certificate 008 896 425, which requires Munich Re to pay Zurich
$2,425,000.00 in losses and $308,865.91 in DJ expense.

34.    As reflected in the invoice dated June 12, 2006, losses in the amount of
$3,194,025.65 and DJ expense in the amount of $406,814.70 were allocated to the Zurich policy
in effect from June 30, 1993 to June 30, 1994.  These losses and expenses are covered by
Facultative Reinsurance Certificate 009 031 142, which requires Munich Re to pay Zurich
$1,864,921.80 in losses and $237,530.21 in DJ expense.

35.    As reflected in the invoice dated June 12, 2006, losses in the amount of
$3,194,025.68, expenses in the amount of $14,363,270.73, and DJ expense in the amount of
$406,814.70 were allocated to the Zurich policy in effect from June 30, 1994 to June 30, 1995.
These losses and expenses are covered by Facultative Reinsurance Certificate 009 088 822,
which requires Munich Re to pay Zurich $1,645,519.26 in losses, $7,399,764.75 in expenses,
and $209,585.48 in DJ expense.

36.    As reflected in the invoice dated June 12, 2006, losses in the amount of
$3,194,025.66, expenses in the amount of $16,832,531.91, and DJ expense in the amount of
$406,814.70 were allocated to the Zurich policy in effect from June 30, 1995 to June 30, 1996.
These losses and expenses are covered by Facultative Reinsurance Certificate 009 236 266,

which requires Munich Re to pay Zurich $1,645,519.25 in losses, $8,671,895.02 in expenses, and $209,585.48 in DJ expense.

37.    As reflected in the invoice dated June 12, 2006, losses in the amount of $2,724,958.00, and DJ expense in the amount of $406,814.70 were allocated to the Zurich policy in effect from June 30, 1996 to June 30, 1997.  These losses and expenses are covered by Facultative Reinsurance Certificate 009 252 225, which requires Munich Re to pay Zurich $1,293,718.50 in losses and $193,141.95 in DJ expense.

38.    Under the terms of the Facultative Certificates, Munich Re currently is responsible to pay Zurich the sum of $29,078,479.09.

39.    On January 29, 2007, Munich Re informed Zurich that it owed no reinsurance payment under the Facultative Certificates issued to Zurich as reinsurance for the primary policies issued to Watts and Jones.

40.    To date, Munich Re has failed to pay any amount that Zurich has billed to Munich Re and that is owed pursuant to its obligations under the Facultative Certificates.

## COUNT I:    BREACH OF CONTRACT

41.    The allegations contained in paragraphs 1 through 40 above are realleged and incorporated by reference herein.

42.    Pursuant to the terms of the Facultative Certificates, Munich Re is obligated to indemnify Zurich for the losses and expenses that Zurich paid in connection with the underlying Watts insurance claims and the expenses incurred in connection with the Coverage Action filed by Watts and Jones against Zurich.

43.    Munich Re breached its contractual obligations to Zurich by failing to pay its allocated share of the losses and expenses that Zurich paid in connection with the underlying Watts insurance claims and the expenses incurred in connection with the Coverage Action, which to date, collectively totals at least $29,078,479.09.

44.    The contractual relationship between the ceding company and the reinsurer includes implied duties unique to reinsurance: the duty of "*uberrimae fide*" or "utmost good faith" and the duty of the reinsurer to follow the cedent's fortunes and settlements.  These duties also obligate Munich Re to indemnify Zurich for any amounts contractually owed.

45.    By not paying Zurich all amounts due and owing under the Facultative Certificates, Munich Re has breached its duty to follow the fortunes and settlements of its cedent.  Zurich has been damaged by Munich Re's breach of these duties in an amount in excess of $29,078,479.09, plus interest.

## COUNT II:    DECLARATORY RELIEF WITH RESPECT TO FUTURE LOSSES AND EXPENSES ARISING OUT OF AND/OR INCURRED IN CONNECTION WITH THE ZURICH PRIMARY POLICIES

46.    The allegations contained in paragraphs 1 through 45 above are realleged and incorporated by reference herein.

47.    As a result of the foregoing, an actual, ripe controversy of a justiciable nature also exists between Zurich and Munich Re concerning Munich Re's obligations under the Facultative Certificates to reimburse Zurich for amounts paid, and to be paid, for losses and other expenses Zurich incurred, and may incur, in indemnifying Watts and Jones in connection with the Zurich Primary Policies reinsured under the Facultative Certificates and in litigating the

Coverage Action brought against Zurich by Watts and Jones. The controversy is of sufficient immediacy as to justify the issuance of a declaratory judgment and by the terms and provisions of 28 U.S.C.A. § 2201, this court is vested with the power to declare the rights and liabilities of the parties and to give any further relief as may be necessary.

48.    Zurich has paid amounts for indemnity and defense costs under the Zurich Primary Policies, and has paid expenses associated with litigating and/or investigating the Coverage Action brought by Watts and Jones. Munich Re has asserted that it is not liable to indemnify Zurich for these amounts.

49.    To date, trial court orders regarding Zurich's indemnity obligation have only been issued in connection with the DWP Settlement and the Phase I Cities Settlement. As unsettled claims against Watts and Jones remain in the Armenta Action, and the Coverage Action brought by Watts and Jones against Zurich remains unsettled and is of a continuing nature, Zurich may incur further losses and expenses, including future indemnity payments, defense costs and DJ expenses in connection with the Watts and Jones claims.

50.    Munich Re has a present and continuing obligation under the Facultative Certificates to make loss and expense payments to Zurich as they become due, pursuant to all statements of account previously rendered, and to be rendered in the future, in respect of unreimbursed paid losses and expenses arising under and/or in connection with the aforementioned Zurich Primary Policies.

51.    Zurich has no adequate remedy at law.

52.     To avoid the necessity of Zurich having to repeatedly litigate Munich Re's obligation to indemnify Zurich in connection with these loss and expense payments, Zurich respectfully requests the entry of a judgment declaring that Munich Re is obligated to reimburse Zurich under the Facultative Certificates for indemnity and expense payments that have been and/or may be made by Zurich in connection with the Zurich Primary Policies and the claims brought against Watts and Jones.

**WHEREFORE**, Zurich respectfully requests that the Court enter judgment in its favor and against Munich Re as follows:

1.     On COUNT I, awarding Zurich damages in the amount of at least $29,078,479.09, plus interest;

2.     On COUNT II, declaring that under the Facultative Certificates, Munich Re is obligated to reimburse Zurich for indemnity payments that have been and/or will be made by Zurich in connection with the Zurich Primary Policies and the claims brought against Watts and Jones;

3.     On all COUNTS:

    a.     Awarding Zurich its attorney's fees and costs of this action; and

    b.     Such other and further relief as the Court may deem just and proper.

Dated:     April 12, 2007

CHADBOURNE & PARKE LLP

By _Phoebe A. Wilkinson_

Phoebe A. Wilkinson (PW-3143)
A Member of the Firm
Attorneys for Zurich American Insurance
Company, as successor to Zurich Insurance
Company, U.S. Branch
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

OF COUNSEL:
CHADBOURNE & PARKE LLP
Joy L. Langford
Ellen MacDonald Farrell
1200 New Hampshire Avenue, N.W.
Washington, DC  20036
(202) 974-5600